## S06A1574. PERDUE v. O'KELLEY et al.
### (632 SE2d 110)

BENHAM, Justice.

In 2004, the General Assembly approved Senate Resolution 595, placing on the ballot a proposed constitutional amendment (hereinafter, "the amendment") which was approved by the electorate and became Art. I, Sec. IV, Par. I of the Georgia Constitution of 1983:

> Recognition of marriage.
> (a) This state shall recognize as marriage only the union of man and woman. Marriages between persons of the same sex are prohibited in this state.
> (b) No union between persons of the same sex shall be recognized by this state as entitled to the benefits of marriage. This state shall not give effect to any public act, record, or judicial proceeding of any other state or jurisdiction respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other state or jurisdiction. The courts of this state shall have no jurisdiction to grant a divorce or separate maintenance with respect to any such relationship or otherwise to consider or rule on any of the parties' respective rights arising as a result of or in connection with such relationship.

Following the electorate's approval of the amendment,[1] plaintiffs-appellees filed an action seeking a declaration that the amendment was unconstitutional because the ballot language was misleading and because the amendment contains multiple sections dealing with more than one subject, thereby violating the requirement in Art. X, Sec. I, Par. II, Ga. Const. 1983, that voters be allowed to vote on amendments separately.[2] The trial court rejected the challenge to the ballot language, but held the amendment unconstitutional based on its finding that the first sentence of subparagraph (b) ("No union between persons of the same sex shall be recognized by this state as entitled to the benefits of marriage.") deals with how same-sex relationships shall be treated by the state, which the trial court found to be a different subject than defining marriage as the union of man

---

[1] Plaintiffs-appellees filed an action prior to the election attacking the ballot language of the proposed amendment. The trial court's denial of injunctive relief was affirmed by this Court in *O'Kelley v. Cox*, 278 Ga. 572 (604 SE2d 773) (2004).

[2] "When more than one amendment is submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment separately, provided that one or more new articles or related changes in one or more articles may be submitted as a single amendment." Art. X, Sec. I, Par. II, Ga. Const. 1983.

and woman. Appellant filed this appeal and requested it be expedited, which request this Court granted.

This Court is a court "for the correction of errors of law made by the trial courts. [Cit.] . . . An error of law has as its basis a specific ruling made by the trial court." *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999). The specific ruling of the trial court at issue on this appeal is that the first sentence of subparagraph (b) of the amendment renders the amendment violative of the multiple-subject rule found in Art. X, Sec. I, Par. II, Ga. Const. 1983. The correctness of that ruling is the only issue to be decided by this Court in this case.[3]

"The test of whether an Act or a constitutional amendment violates the multiple subject matter rule is whether all of the parts of the Act or of the constitutional amendment are germane to the accomplishment of a single objective." *Carter v. Burson*, 230 Ga. 511, 519 (3) (198 SE2d 151) (1973). Although based on two different constitutional provisions, the multiple-subject rules relating to legislation and to constitutional amendments are analogous and the test to be applied is the same. Id.[4] Appellees acknowledge the germaneness test, but argue that proper analysis in this case would be based on language in *Rea v. City of LaFayette*, 130 Ga. 771, 772 (61 SE 707) (1908), decrying the practice of linking disparate legislative enactments:

> Each proposition submitted to the voters should stand or fall upon its own merits, without . . . receiving any adventitious aid from another and perhaps more popular one. . . . No voter should be compelled, in order to support a measure which he favors, to vote also for a wholly different one which his judgment disapproves. . . . When he is thus compelled, if he votes at all, there is something closely akin to coercion when his ballot is cast.

However, in *Carter v. Burson*, supra, 230 Ga. at 519, after stating the germaneness test, this Court noted "[t]he rationale upon which this

---

[3] The scope of this appeal is narrow. Because the appellees have not filed a cross-appeal, we are not presented with any issue regarding the ballot language, and we do not, as an appellate court, judge the wisdom of the amendment. "With the wisdom or expediency of the amendment this court does not deal. The legislature and the people have passed upon that." *Hammond v. Clark*, 136 Ga. 313, 333 (71 SE 479) (1911).

[4] That test has been in use since at least 1902 when this Court applied it to reject a multiple-subject challenge to a legislative enactment establishing a criminal court of Atlanta (*Welborne v. State*, 114 Ga. 793 (6) (40 SE 857) (1902)), and has been used as recently as this Court's decision in *Goldrush II v. City of Marietta*, 267 Ga. 683 (2) (a) (482 SE2d 347) (1997), rejecting a multiple-subject challenge to a constitutional amendment authorizing local government regulation of alcohol and nudity.

rule rests was well summarized by this court in" *Rea v. City of LaFayette,* supra. Thus, the principle asserted by appellees as the proper standard by which to measure the amendment is not a separate test, but is the basis for the germaneness test.

Application of the germaneness test requires identification of the subject-matter or objective of the amendment. The trial court found the objective to be "the acknowledgment of the union of man and woman as the only valid form of marriage in Georgia"; appellant contends the objective is "the non-recognition in Georgia of same sex conjugal relationships"; and appellees argue the objective is to define "marriage as the union between man and woman, reserving that status exclusively to different-sex couples." The commonality of those expressions is exclusiveness, establishing that marriage and its attendant benefits belong only to unions of man and woman. That exclusiveness is the essence of the amendment's purpose. Accordingly, we adopt as the amendment's objective, reserving marriage and its attendant benefits to unions of man and woman.

Having established the objective of the amendment, the remaining inquiry is whether the sentence, "No union between persons of the same sex shall be recognized by this state as entitled to the benefits of marriage," is germane to the objective of reserving marriage and its attendant benefits exclusively to unions of man and woman.

> [T]he word "subject matter" as used in the Constitution . . . is to be given a broad and extended meaning so as to allow the legislature authority to include in one Act all matters having a logical or natural connection. To constitute plurality of subject matter, an Act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any logical connection with or relation to each other. All that our Constitution requires is that the Act embrace only one general subject; and by this is meant, merely, that all matters treated by the Act should be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one subject.

*Crews v. Cook,* 220 Ga. 479, 481 (139 SE2d 490) (1964). Applying that formulation of the germaneness test to this case, it is apparent that the prohibition against recognizing same-sex unions as entitled to the benefits of marriage is not "dissimilar and discordant" to the objective of reserving the status of marriage and its attendant benefits exclusively to unions of man and woman. We conclude, therefore, contrary to the trial court's ruling, that the first sentence of subparagraph (b) of the amendment does not address a different objective than that of

the amendment as a whole and does not render the amendment violative of the multiple-subject prohibition of Art. X, Sec. I, Par. II, Ga. Const. 1983.

*Judgment reversed. Sears, C. J., Hunstein, P. J., Carley, Thompson and Hines, JJ., and Judge F. Larry Salmon concur. Melton, J., not participating.*

DECIDED JULY 6, 2006.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Stefan E. Ritter, Senior Assistant Attorney General, Warlick, Tritt & Stebbins, Charles C. Stebbins III*, for appellant.

*Alston & Bird, John E. Stephenson, Jr., Jeffrey J. Swart, Gerald R. Weber, Jr., Elizabeth L. Littrell, Jack H. Senterfitt, Bondurant, Mixson & Elmore, Emmet J. Bondurant, Michael B. Terry*, for appellees.

*Arnall, Golden & Gregory, Scott C. Titshaw, Kilpatrick Stockton, Miles J. Alexander, Alexander S. Clay, Michael W. Tyler, Jill Warner, Drew, Eckl & Farnham, Brent M. Estes*, amici curiae.